IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TIMOTHY H.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:18-cv-01783-CL

**OPINION & ORDER**

CLARKE, Magistrate Judge:

Plaintiff Timothy H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. All parties have consented to magistrate judge jurisdiction in this case. ECF No. 6. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On January 23, 2014, Plaintiff filed for disability and disability insurance benefits and supplemental security income, alleging disability beginning on December 1, 2013. Tr. 15, 330, 337. Plaintiff failed to appear at the scheduled hearing and his application was dismissed by the Administrative Law Judge ("ALJ"). Tr. 15. On review, the Appeals Council determined that Plaintiff had good cause for his failure to appear and remanded the case to the ALJ for a hearing. *Id.*

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

On remand, a hearing was held before an ALJ on July 13, 2017. Tr. 15. On September 22, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 40. On August 10, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2013. Tr. 18. The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; major depressive disorder; posttraumatic stress disorder ("PTSD"); an antisocial personality disorder; a bipolar disorder; an anxiety disorder; and an adjustment disorder. Tr. 18-19. The ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. Tr. 26.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional restrictions: he can occasionally climb ladders, ropes, and scaffolds; he can frequently climb ramps and stairs; he can frequently balance, stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to excessive vibration and hazards; he can understand and carry out simple instructions in a work environment with few work place changes; and he can have occasional interaction with the general public, coworkers, and supervisors. Tr. 29.

Plaintiff was 57 years old on the alleged onset date. Tr. 39. He has at least a high school education and is able to communicate in English. *Id.* The ALJ determined that Plaintiff was unable to perform his past relevant work. Tr. 38. At step five of the sequential analysis, the ALJ determined that Plaintiff was able to perform work as a landscape laborer. Tr. 39. Accordingly, the ALJ determined Plaintiff was not disabled. Tr. 40.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff contends that the ALJ erred by discounting Plaintiff's subjective symptom testimony and the medical opinion of Plaintiff's treating physician, Sarah Dawson, M.D. Plaintiff initially contended that the ALJ erred at step five of the sequential analysis by basing a finding of non-disability on a single occupation. In his Reply, ECF No. 22, Plaintiff concedes this issue

except to the extent that the ALJ's findings at step five are unsupported due to Plaintiff's other assignments of error. Reply Br. at 1-2.

## I.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

During the hearing, Plaintiff testified that he had worked at Pilot Butte Drive-In as a line cook in 2015, earning nearly enough to qualify as a substantial gainful activity. Tr. 55. Plaintiff testified that he left Pilot Butte during a manic episode in May 2015 and was terminated. Tr. 55-

56. Plaintiff applied for and eventually received unemployment benefits following his termination. Tr. 56, 59-60.

Plaintiff applied for work in 2015 and "was ready for work if I was able to get it," but was unable to secure employment because of his felony convictions. Tr. 62, 67. Plaintiff eventually found work in 2016 at Cascade West and Cascade Lodge as a cook, working between 15 and 22 hours per week. Tr. 62. Work at Cascade West involved lifting between 50 and 70 pounds. Tr. 66. Plaintiff testified that he was offered full-time employment at Cascade West but declined because of his back pain. *Id.* Plaintiff worked for Cascade West through May 2017 when he had another manic episode and abruptly left for Reno, Nevada. Tr. 64-65.

Plaintiff was prescribed several medications, including Depakote, Seroquel, Ambien, and Celexa, which Plaintiff testified were "actually working." Tr. 61-62. At the time of the hearing, Plaintiff testified that he was still talking Ambien, Seroquel, and Celexa, but that they made his head feel "totally static," and left him feeling "loopy and very tired." Tr. 68.

Plaintiff testified that he was currently unable to work due to back pain and bipolar symptoms. Tr. 66-68. He testified that his back would go out a few hours into his shift and he would have to take Codeine for pain. Tr. 66. Plaintiff also testified that he takes Gabapentin for pain in the mornings. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his symptoms, "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 31.

First, the ALJ noted that Plaintiff's subjective complaints were undermined by evidence that he had worked steadily since the alleged onset date. Tr. 31. Evidence that a claimant is able

to continue his past work is a valid consideration in weighing subjective symptom testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Plaintiff also received unemployment benefits in 2015, which required that he be ready, willing, and able to work full time. Tr. 31, 61. The record does indicate that Plaintiff continued to work and had earnings that, as the ALJ noted, sometimes approached the level of substantial gainful activity. Tr. 380-83. Plaintiff's treatment notes indicate that he also worked substantial hours at the kitchen of a mission in 2014. Tr. 902, 914, 931. "While the claimant did not receive pay for this work activity, he was involved in the mission program and receiving room and board in exchange for his work activity." Tr. 27. Although Plaintiff's earnings statements are consistent with part-time work, Plaintiff told his treatment providers in 2017 that he was working for 11-12 hours a day, six days a week. Tr. 1032; *see also* Tr. 1031 (On March 13, 2017, Plaintiff reported "he is still working 6 days/week" and "worked long hours yesterday and today."). On this record, the Court concludes that the ALJ reasonably considered Plaintiff's continued employment in assessing his testimony.

The ALJ also noted Plaintiff's testimony that the major impediment in Plaintiff's search for work during the relevant period were his felony convictions. Tr. 31. Social Security regulations provide that a claimant is not disabled if he or she remains unemployed due to an inability to get work or the hiring practices of employers. 20 C.F.R. § 404.1566(c). Plaintiff testified that the major hinderance to his finding work was his felony conviction and that he eventually found work at Cascade West because the employer did not perform a background check. Tr. 62; *see also* Tr. 67 ("We were looking for full-time work and a lot of people wanted to hire me and everything, but if I found the full-time job I was willing to give it a try and everything. But we never made—a lot of the times they wouldn't hire because I was an ex-felon."). The Court

concludes that the ALJ reasonably considered Plaintiff's testimony that his felonies were the most significant limiting factor in his ability to find work.

The ALJ also noted that Plaintiff's testimony was not fully supported by the objective medical evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this case, the ALJ noted that Plaintiff had been diagnosed with spinal issues, but reported relief following surgery in May 2016. Tr. 31, 1002-09. Although Plaintiff reported back and hip pain in March 2017, Tr. 1031-32, he continued to work as a cook and testified that his departure from that position was precipitated by a manic episode, rather than physical limitations. Tr. 31, 63-64.

Although Plaintiff testified that he lost his job at Pilot Butte and his job at Cascade West due to manic episodes, the ALJ noted that only the second manic episode, in May 2017, was documented in the medical record. Tr. 32. The medical record also reveals that Plaintiff had stopped taking his psychotropic medication more than two years prior to his manic episode in May 2017. Tr. 32, 1028-29. When Plaintiff took his medication, his medical records reflect generally benign findings. *See, e.g.,* Tr. 841-42 (January 2014, Plaintiff "anxious," but with logical, goal-oriented thinking and grossly intact memory and limited-to-fair insight and judgment); 885 (May 2014, Plaintiff anxious, but with "ok" attention and concentration, intact memory, and logical, goal-oriented thinking); 903-04 (April 2014, Plaintiff anxious with PTSD issues, but with "focused" attention and concentration and logical, goal-directed thinking); 1012 (June 2017, Plaintiff depressed and anxious, but with fair insight and judgment, normal attention span, and logical insight and judgment). On this record, the Court concludes that the ALJ reasonably considered the medical record in assessing Plaintiff's subjective symptom testimony.

The ALJ also considered Plaintiff's prior inconsistent statements in assessing his subjective symptom testimony. "An ALJ may consider inconsistent statements by a claimant in assessing her credibility," but a single discrepancy is insufficient "to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017). Of note, Plaintiff has a documented history and diagnosis of malingering dating back to 2003. Tr. 856. In this case, the ALJ pointed to a psychological examination, in which Plaintiff displayed significant cognitive defects, Tr. 33, 978. The examiner, Dr. Trueblood, did not believe that Plaintiff malingered on the exam but could not "entirely rule out the possibility that [Plaintiff] provided inaccurate information in some areas including possibly intentionally poor performance on the cognitive screening." Tr. 979. The ALJ noted that other examinations did not reveal comparable cognitive deficits and that Plaintiff was working in a skilled job at the time of the examination. Tr. 33, 1014-16. The ALJ identified other inconsistencies in Plaintiff's report of his medical history. Tr. 33-34. For example, in August 2014, Plaintiff denied any history of head injury or loss of consciousness, Tr. 997, but reported to Dr. Trueblood that he had been struck in the head and knocked unconscious for hours. Tr. 974. On this record, and considering Plaintiff's history of malingering, the Court concludes that the ALJ properly considered Plaintiff's inconsistent statements.

The Court therefore concludes that the ALJ provided adequate justification for discounting Plaintiff's subjective symptom testimony.

## II.  Medical Opinion Evidence

Plaintiff contends that the ALJ erred by discounting the opinion of treating physician, Dr. Dawson. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217,

1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Dawson became Plaintiff's treating physician in November 2015. Tr. 983. Dr. Dawson provided two separate statements for the ALJ's consideration. Tr. 37. On December 28, 2016, Dr. Dawson reported that Plaintiff suffered from bipolar disorder with depression, PTSD, disc degeneration of the lumbar spine, lumbar facet arthropathy, and mylopathy of the lumbar region. Tr. 970. Dr. Dawson reported that Plaintiff was "stable currently" but "expected to worsen over time." *Id.* Dr. Dawson opined that Plaintiff would be limited to sedentary work "requiring hand dexterity for fine manipulation and repetitive tasks; Exerting 10 lbs. and/or a negligible amount of force to lift, carry, push, pull, or move objects." *Id.* Dr. Dawson also reported that Plaintiff would require accommodation for memory loss; limited ability to stand; problems stooping or bending; that he would require an assistive brace; and would need three or more sick days per month. *Id.* Dr. Dawson noted that Plaintiff was independent in his activities of daily living but was "unable to meet physical demands of heavy housework," including stooping and bending for cleaning or laundry, and was "unable to lift/push/pull" for vacuuming or yard work. Tr. 970.

Six months later, on June 16, 2017, Dr. Dawson submitted a second medical opinion. Tr. 983-87. Dr. Dawson diagnosed Plaintiff with bipolar disorder with severe mania and depressive episodes, PTSD, anxiety, chronic degenerative disc disease, facet arthrosis of the lumber spine, and a frontal brain mass. Tr. 983. Dr. Dawson described his symptoms as chronic back pain with

decreased strength and sensation of his right leg; symptoms of depression and PTSD; poor executive function; night terrors; lack of planning skills; fear of public places; and "difficulty maintaining emotions/behavior/social interaction. *Id.* Dr. Dawson opined that Plaintiff could only occasionally lift or carry less than ten pounds; that he could stand or walk for 15 minutes at a time; that he could stand or walk for less than two hours in an eight-hour day; that he could sit for one hour at a time; that he could sit for less than two hours in an eight-hour day; and that he required frequent position changes and needed to recline. Tr. 984. Dr. Dawson reported that Plaintiff was limited in his lower extremities and could only occasionally stoop or bend, reach overhead or at shoulder height, handle, finger, or feel. *Id.* Dr. Dawson opined that Plaintiff could never climb, kneel, crouch, or crawl. *Id.* Dr. Dawson reported that Plaintiff was extremely limited in his ability to work a full day without needing more than the allotted number or length of rest periods during the day due to pain and weakness in his back and right leg. Tr. 986.

In terms of mental limitation, Dr. Dawson reported that the "stress of workplace demands may trigger depressive/manic symptoms." Tr. 985. Dr. Dawson reported marked limitations in responding to demands and adapting to changes; moderate limitations in managing psychological symptoms and independent planning; and mild limitations in distinguishing between acceptable and unacceptable performance, setting realistic goals, maintaining appropriate hygiene and attire, and being aware of normal hazards and taking appropriate precautions. *Id.* Dr. Dawson opined that Plaintiff would need to take unscheduled breaks due to his mental health symptoms. Tr. 987.

For social functioning, Dr. Dawson opined that Plaintiff lacked interpersonal skills due to his bipolar disorder, anxiety, depression, and PTSD. Tr. 987. Dr. Dawson assessed marked limitations in Plaintiff's ability to handle conflicts with others and in keeping his social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Tr. 986. She

assessed moderate limitations to his ability to ask for help when needed and his ability to state his own point of view. Tr. 986. Dr. Dawson assessed mild limitations to Plaintiff's ability to cooperate with others; initiate or sustain conversation; to understand and respond to social cues; and to respond to requests, suggestions, criticism, corrections, and challenges. *Id.* Dr. Dawson reported that "trouble working with coworkers and boss at prior job" had triggered a manic episode for Plaintiff. Tr. 987. Dr. Dawson opined that Plaintiff would miss two or more workdays per month due to his impairments, symptoms, or medications and their side effects. *Id.*

The ALJ gave "little weight" to Dr. Dawson's opinions. Tr. 37. The ALJ found that Dr. Dawson's December 2016 opinion was "markedly inconsistent with the claimant's activities of daily living, which included working a medium, skilled, SVP 7 job at a part to full time basis in both 2016 and 2017." *Id.* The ALJ also noted that Dr. Dawson's opinions about the need for extra breaks, conflict with coworkers, and the need for excessive days off from work was unsupported by evidence from Plaintiff's employers. *Id.*

With respect to the June 2017 opinion, the ALJ found that "the extreme physical limitations assessed by Dr. Dawson are inconsistent with the claimant's ability to work a medium job up until two weeks before she wrote the opinion." Tr. 38. The ALJ noted that medium work requires lifting 25 pounds frequently and 50 pounds occasionally and to sit, stand, and walk for six hours a day at two-hour intervals, which was "totally inconsistent" with the limitations assessed by Dr. Dawson. *Id.* The ALJ noted that there was "no evidence of any worsening of the claimant's physical disorders in May 2017 that would explain Dr. Dawson's reports of such extreme physical limitations," so soon after Plaintiff had worked at a medium level. *Id.*

In terms of mental functioning, the ALJ acknowledged that Plaintiff had a manic episode in May 2017 but noted that Plaintiff "admitted that he was not taking any psychotropic medications

when this occurred," and that Dr. Dawson "made no comments on the impact of mitigating medications on the claimant's ability to work." Tr. 38. "Given that the claimant's history of working steadily at, or close to substantial gainful activity levels since his alleged onset date, the record supports a finding that the claimant when taking medications, would not have manic episodes or psychological symptoms that prevented him from performing all work." *Id.*

Contradiction with a plaintiff's activities of daily living is a valid reason for discounting the opinion of a treating physician. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In this case, the record shows that, up to May 2017, Plaintiff was working at least part-time at an exertional level that far exceeded the limitations assessed by Dr. Dawson in December 2016 and June 2017. Tr. 64, 66-67. The ALJ also correctly noted that Dr. Dawson did not comment on the mitigating effects of Plaintiff's medication in terms of mental function. Tr. 38. In this case, Plaintiff's treatment records reflect that he had "not been taking his psychotropic medications for some time" before his manic episode in May 2017. Tr. 1028; *see also* Tr. 1029 ("Patient reports he has not been taking his psychotropic medications for 2.5 years, since leaving Seattle and getting married."). Plaintiff testified that he experienced relief from his psychotropic medication. Tr. 61-62. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

On this record, the Court concludes that the ALJ adequately supported her decision to discount Dr. Dawson's medical opinion.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this _____28_____ day of January 2021.

                                          _____
                                          MARK CLARKE
                                          United States Magistrate Judge